UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TIMOTHY BARKOVIC,

    Plaintiff,                                       Civil Action No. 10-CV-10962

vs.                                             HON. BERNARD A. FRIEDMAN

TOWNSHIP OF SHELBY, et al.,

    Defendants.
_____/

## OPINION AND ORDER GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**and**

## DISMISSING SUPPLEMENTAL CLAIM

        This matter is presently before the court on the motion of defendant Hogan for summary judgment [docket entry 71]. Response and reply briefs have been filed. Pursuant to E.D. Mich. 7.1(f)(2), the court shall decide this motion without oral argument.

        Plaintiff Timothy Barkovic, an attorney, and defendant Terrance Hogan, a police officer, were involved in a physical altercation in the hallway of state courthouse in Shelby Township, Michigan, on March 10, 2009. Barkovic alleges that Hogan "grabbed the plaintiff and slammed him into a door frame, assaulting and seriously injuring the plaintiff." Am. Comp. ¶ 8. Although plaintiff initially named a number of other defendants, including the township, the county, and the sheriff, those defendants have been dismissed by stipulation. *See* docket entries 61, 69. Only defendant Hogan remains, and the claims asserted against him are for assault and battery

(Count I) and "deprivation of civil rights" (Count II).[1] *See* Am. Compl. ¶¶ 18-21, 22-34.

The court's subject matter jurisdiction is dependent entirely on Count II, which is brought under 42 U.S.C. § 1983. Regarding this claim, the complaint alleges:

> The defendants, Officer Terrance Hogan and John Doe Police Officers, were at all times relevant to this action, acting under color of Michigan statute, ordinance, regulations, custom and usage within the meaning of 42 U.S.C. Section 1983, in the assault and battery and in the eventual prosecution of plaintiff, all under the direction, support, knowledge and authority of the defendants Township of Shelby and the County of Macomb.

Am. Compl. ¶ 27. Plaintiff alleges Hogan deprived him of his due process rights and his right to be free from unreasonable searches and seizures under the Fourth and Fourteenth Amendments. Therefore, the threshold jurisdictional issue is whether Hogan was acting under color of law when he threw plaintiff against the doorway, as the complaint alleges. *See Upsher v. Grosse Pointe Pub. Sch. Sys.*, 285 F.3d 448, 452 (6th Cir. 2002) ("to state a viable claim under 42 U.S.C. § 1983, plaintiffs must produce evidence that . . . the deprivation was caused by a person while acting under the color of state law").

The Supreme Court has explained the state action requirement as follows:

> The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." In *Lugar v. Edmondson Oil Co.*, *supra*, the Court made clear that if a defendant's conduct satisfies the state-action requirement of the Fourteenth Amendment, "that conduct [is] also action under color of state law and will support a suit under § 1983." In such circumstances, the defendant's alleged infringement of the plaintiff's federal rights is "fairly attributable to the State." *Lugar*, 457 U.S., at 937, 102 S.Ct.,

---

[1] Plaintiff's other claims against defendant Hogan have been dismissed by stipulation. *See* docket entry 68.

> at 2753.
>
> To constitute state action, "the deprivation must be caused by the exercise of some right or privilege created by the State ... or by a person for whom the State is responsible," and "the party charged with the deprivation must be a person who may fairly be said to be a state actor." *Ibid.* "[S]tate employment is generally sufficient to render the defendant a state actor." *Id.*, at 936, n. 18, 102 S.Ct., at 2753, n. 18; *see id.*, at 937, 102 S.Ct., at 2754. It is firmly established that a defendant in a § 1983 suit acts under color of state law when he abuses the position given to him by the State. Thus, generally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law.

*West v. Atkins*, 487 U.S. 42, 49-50 (1988) (some citations omitted).

"Acts of police officers in the ambit of their personal, private pursuits fall outside of 42 U.S.C. § 1983." *Stengel v. Belcher*, 522 F.2d 438, 441 (6th Cir. 1975). In determining whether a police officer is acting under color of state law, "[t]he fact that [he] is on or off duty, or in or out of uniform is not controlling. 'It is the nature of the act performed, not the clothing of the actor or even the status of being on duty, or off duty, which determines whether the officer has acted under color of law.'" *Id.* (citation omitted). In *Stengel*, an out-of-uniform, off-duty police officer was found to have acted under color of state law when he intervened in a bar fight and used his police-issued weapons (mace and a pistol) against the combatants, because police regulations required that he carry these weapons and that he intervene in any criminal activity. *See id.*

Another instructive case is *Sanchez v. Crump*, 184 F. Supp.2d 649 (E.D. Mich. 2002), in which defendant was the acting police chief in Inkster, Michigan. Defendant sold his personal boat to plaintiffs on an installment agreement. When plaintiffs defaulted, defendant contacted the Detroit Police Department ("DPD") and, introducing himself as an acting police chief, met with a DPD officer. Defendant presented the officer with "the pertinent facts on a standard request for

warrant form." *Id.* at 653. The officer signed the warrant request and a warrant was issued. Plaintiffs were arrested and then acquitted at trial. In deciding that defendant had not acted under color of state law, the court stated:

> In determining whether Crump acted under color of state law, I must consider whether he acted pursuant to an official duty, or whether the act was instead private in nature. "In order for liability to attach, the action alleged by the plaintiff to be 'under color of law' must be pursuant to some official duty or function of the officer and the factual context must be one which might reasonably be expected to require the intervention of the state through one of its agencies." *Hudson*, 856 F.Supp. at 1228. If the defendant officer acted pursuant to an official duty, or "in the line of duty," he acted under color of state law.
> If the act was private in nature, however, the actions of Crump are not acts undertaken by color of state law. *See Redding v. St. Eward*, 241 F.3d 530, 533 (6th Cir.2001) (finding officer's acts were "functionally equivalent to that of any private citizen calling for police assistance" and the "sole nature of the act she performed was to report what she believed to be a criminal act."), *Delcambre v. Delcambre*, 635 F.2d 407, 408 (5th Cir.1981) (assault upon sister-in-law by police chief on police station property was not under color of state law because it arose out of family and political matters).
> Even if the act was private in nature, however, the officer may still have acted under color of state law if he or she improperly exercised official authority to forward his or her interests in personal matters. *See Pickard*, 70 F.Supp.2d at 805. Officers act under color of state law when they have "engaged in official conduct, purported to be engaged in official conduct, and/or used a weapon issued to the officer by the law enforcement agency." *Id.* at 805–06. "[M]anifestations of official authority include flashing a badge, identifying one's self as a police officer, placing an individual under arrest, or intervening in a dispute between third parties pursuant to a duty imposed by police department regulations." *Id.* . . .
>
> \* \* \*
>
> I find that Crump did not improperly exercise his official authority in this personal matter to an extent that would warrant a finding that he acted under color of law. I note, however, that Crump himself completed the warrant request on an official Inkster Police Department form, and listed his work address and phone number. He

> also appeared in person at the DPD, and identified himself as a police officer in his conversation first with Lieutenant Caretti, and then with Oehmke. (Dep. Of Oehmke, July 26, 2001, at p. 10–11.) But I find, however, in light of all the circumstances, that the use of the Inkster form, the placement of his work address and phone number, and his introduction of himself as a police officer which exhibited poor judgment by Crump, does not warrant a finding that he acted under color of law. The fact that he was a police officer when he reported the alleged embezzlement does not transform this action to one arising under state law.

*Id.* at 655- 56 (footnote and some citations omitted).

In the present case, plaintiff has failed to produce any evidence suggesting that defendant was acting under color of state law when he was involved in the altercation with plaintiff. Plaintiff testified that he was at the courthouse to negotiate a plea deal for a client. Barkovic Dep. at 172, 184. After speaking with the prosecutor, plaintiff went into the hallway to look for his client. *Id.* at 187. In the hallway, "a person in a blue jacket, it's kind of a spring jacket, . . . he had tan pants on as I recall, interposes his body between me and the direction I was going." *Id.* at 189. Defendant "told me I'd better shut my f------ mouth [and] . . . if you do not shut your mouth, I'm going to shut it for you." *Id.* at 192-93. Plaintiff did not know who defendant was and he did not know defendant was a police officer. *Id.* at 192, 208. Plaintiff and defendant traded "f— you's." *Id.* at 194-95. At some point, plaintiff "figured out he was a cop." *Id.* at 194. Plaintiff handed a document to an attorney who was standing nearby and "[t]he next thing I remember is ending up on the floor on all fours . . . ." *Id.* at 196, 199. Plaintiff was "propelled to the doorframe . . . [w]ith a great deal of force." *Id.* at 202. Plaintiff testified he was grabbed from behind, by the collar, and thrown down. *Id.* at 207. Shortly thereafter, plaintiff was taken by ambulance to the hospital. *Id.* at 215.

Hogan testified that he was at the courthouse under subpoena regarding the same case in which plaintiff was acting as defense counsel. Hogan Dep. at 52-53. In the hallway, Hogan

5

overheard plaintiff making a derogatory comment toward another officer, which prompted Hogan to say to plaintiff, "[W]hy don't you start acting more professional . . . ." *Id.* at 56. Plaintiff responded by telling Hogan "he was going to kick my ass. . . ." *Id.* at 58. The parties began pushing each other, and defendant shoved plaintiff into the wall. *Id.* at 34-39.

Under these circumstances, plaintiff has clearly failed to show that Hogan, in pushing plaintiff against the wall or doorway, "exercised power possessed by virtue of state law and made possible only because [he] is clothed with the authority of state law." *West, supra.* Although defendant was present at the courthouse on police business, he was not exercising any of his power as a police officer during the altercation with plaintiff. Defendant was not in uniform, and plaintiff did not know who he was or that he was a police officer. Defendant did not display a badge, use a weapon, or even state at any time – before, during or after the incident – that he was a police officer. He did not arrest plaintiff or tell plaintiff he was under arrest. Defendant was not acting "in the line of duty" or purport to be doing so, and there were no "manifestations of official authority" at any time during the altercation. *Sanchez, supra*. There was, in short, no exercise by defendant of any power he possessed by virtue of the fact that he was a police officer. Defendant was acting in a purely private capacity, not in his capacity as a police officer.

Because defendant was not acting under color of law, defendant is entitled so summary judgment on plaintiff's § 1983 claim (Count II). In accordance with *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966), the court shall dismiss plaintiff's remaining claim, which is based solely on state law, without prejudice. *See also Brown v. Cassens Transp. Co*., 546 F.3d 347, 363 (6th Cir. 2008) ("a federal court should typically decline to exercise pendent jurisdiction over a plaintiff's state-law claims after dismissing the plaintiff"s federal claims"); *Moon v. Harrison*

*Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) (a federal court that has dismissed a plaintiff's federal-law claims should not ordinarily reach the plaintiff's state-law claims. . . . Residual jurisdiction should be exercised only in cases where the 'interests of judicial economy and the avoidance of multiplicity of litigation' outweigh our concern over 'needlessly deciding state law issues'"). Accordingly,

IT IS ORDERED that defendant's summary judgment motion is granted in part as follows: The motion is granted only as to Count II, and the remaining claim is dismissed without prejudice.

Dated: September 27, 2011               s/Bernard A. Friedman
                                        BERNARD A. FRIEDMAN
                                        SENIOR UNITED STATES DISTRICT JUDGE

I hereby certify that a copy of the foregoing document was sent to parties of record on September 27, 2011 by electronic/U.S. mail.

                                        s/Michael Williams
                                        Releif Case Manager for the
                                        Honorable Bernard A. Friendman